******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# STATE OF CONNECTICUT *v.* WILLIAM FAY
## (SC 19350)

Rogers, C. J., and Palmer, Eveleigh, McDonald and Robinson, Js.*

*Syllabus*

Convicted of the crime of manslaughter in the second degree with a firearm in connection with the shooting death of the victim, the defendant appealed to this court, claiming that the trial court violated his federal constitutional rights to present a defense and to compulsory process when it declined to conduct an in camera review of the victim's records, which were protected by the statutory (§§ 52-146d and 52-146e) psychiatrist-patient privilege, even though the defendant alleged that those records may contain information relevant to his claim of self-defense. At trial, the defendant did not deny shooting the victim, but claimed that he acted in self-defense, and sought to bolster his self-defense claim by presenting evidence of the victim's psychological state at the time of the shooting. The defendant filed motions seeking the victim's psychiatric records and the testimony of the victim's treating psychiatrist concerning any diagnoses or prescriptions that the victim had received relating to aggressive behavior, as well as the possible effects of any prescription medications on the victim's temperament at the time of the shooting. The victim's authorized representative declined to waive the psychiatrist-patient privilege. The trial court held an evidentiary hearing at which the defendant claimed that his right of confrontation under the federal constitution outweighed any privilege that might exist with respect to the victim's records, and that the policies safeguarding the psychiatrist-patient privilege are less compelling when the patient is deceased. The court concluded that the victim's records were privileged, that the records did not fall under any of the statutory (§ 52-146f) exceptions to the privilege, and that the court lacked the authority to create a nonstatutory exception to the general rule of nondisclosure. The court also concluded that, although *State* v. *Esposito* (192 Conn. 166) and other cases permit the court to strike a witness' testimony to protect a defendant's right of confrontation if the witness does not allow the court to conduct an in camera review of his privileged psychiatric records, *Esposito* does not allow a defendant access to privileged records without the patient's consent. On appeal from the judgment of conviction, *held*:

1. This court concluded that, when an accused makes a sufficient preliminary showing that his constitutional right to present a defense can be protected only by an in camera inspection of a homicide victim's privileged psychiatric records that are material to the accused's claim of self-defense, the interests of the accused must prevail over the victim's psychiatrist-patient privilege, and the trial court must undertake such a review; furthermore, in order to make the sufficient preliminary showing required to trigger an in camera review, the accused must demonstrate a compelling need for the trial court to undertake that review, and, in assessing that need, trial courts should consider, among any other relevant considerations, the centrality of the privileged material to the accused's claim of self-defense, the potential significance of those materials in establishing the defense, and the unavailability of less intrusive sources for the same information; moreover, when, after an in camera review, the court determines that the privileged information substantially supports the accused's claim of self-defense, it must disclose such material to the accused.

2. The defendant was not entitled to review of his unpreserved constitutional claims under *State* v. *Golding* (213 Conn. 233) because the record was inadequate for such review: although the defendant expressed his disagreement with the trial court's refusal to review or disclose the victim's privileged psychiatric records, he did not bring before that court the due process and right to present a defense claims that formed the basis of this appeal, and those claims, therefore, were not preserved; moreover, the defendant could not make the required preliminary showing, without improperly supplementing the record on appeal, that he

was entitled to a review of those records, the defendant having provided insufficient evidence to demonstrate that the victim's psychiatric records were necessary to his claim of self-defense, as he failed to demonstrate that the victim suffered from a psychiatric disorder involving aggressive behavior or that there was a link between the victim's prescribed medications and aggressive behavior, and the defendant did not present any testimony that the victim's use of, or his failure to use, his prescribed medications increased aggressiveness or that such medications were sometimes prescribed to mitigate preexisting aggressive behavior.

Argued October 19, 2016—officially released September 12, 2017

*Procedural History*

Substitute information charging the defendant with the crime of murder, brought to the Superior Court in the judicial district of Ansonia-Milford, where the court, *Markle, J.*, denied the defendant's motion for an evidentiary hearing; thereafter, the matter was tried to the jury before *Markle, J.*; verdict and judgment of guilty of the lesser included offense of manslaughter in the second degree with a firearm, from which the defendant appealed to this court. *Affirmed*.

*Allison M. Near*, for the appellant (defendant).

*James A. Killen*, senior assistant state's attorney, with whom, on the brief, was *Kevin Lawlor*, state's attorney, for the appellee (state).

*Opinion*

PALMER, J. In *State* v. *Esposito*, 192 Conn. 166, 179–80, 471 A.2d 949 (1984), this court held that, in certain circumstances, the privileged psychiatric records of a witness testifying for the state are subject to in camera review by the trial court so that the court can determine whether the accused's constitutional right of confrontation entitles him to access to those records; if the witness refuses to authorize such review, the witness' testimony generally must be stricken. In the present case, the defendant, William Fay, was charged with murder and, following a jury trial, was convicted of the lesser included offense of manslaughter in the second degree with a firearm in violation of General Statutes § 53a-56a. He claims that the trial court improperly declined to extend our holding in *Esposito* and thereby violated his constitutional right to present a defense when it refused to conduct an in camera review of certain records of the victim protected by the psychiatrist-patient privilege; see General Statutes §§ 52-146d[1] and 52-146e;[2] even though the defendant alleged that those records may contain information pertinent to the defendant's claim of self-defense.[3] Although we agree with the defendant that the psychiatrist-patient privilege may be surmounted when an accused makes a sufficient showing that the privileged information is material to a claim of self-defense, we conclude that the record in the present case is inadequate for our review of the defendant's unpreserved claim of constitutional error under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015). We therefore affirm the judgment of the trial court.

The following facts that the jury could have found, as well as the following procedural history, are relevant to our resolution of this appeal. On July 8, 2010, while at their shared apartment, the defendant shot the victim twice with the victim's own handgun, causing injuries to which he later succumbed. At trial, the defendant did not deny shooting the victim but claimed that he acted in self-defense.[4] The defendant sought to bolster his self-defense claim by presenting evidence of the victim's underlying psychological state at the time of the shooting. He testified that the victim had a history of drinking and depression, both of which had worsened in recent months following the death of the victim's dog. According to the defendant, these bouts of drinking and depression had led to other violent encounters between them. The defendant also testified that the victim had been receiving treatment from a psychiatrist. In reliance on this evidence, the defendant filed several motions seeking records, as well as the testimony of the victim's treating psychiatrist, concerning any diagnoses or prescriptions that the victim had received relating to aggressive behavior, as well as the possible effects

of any prescription medications on the victim's temper-ament at the time of the shooting.[5] These motions are the subject of the current appeal.

On February 1, 2013, the trial court held a hearing to address the defendant's motions. At the hearing, the court expressed concern that it did not have sufficient medical expertise to review the victim's records in cam-era to determine whether the information contained therein was exculpatory. Nonetheless, the court granted the motions and directed the defendant to subpoena the victim's psychiatric records to the clerk of the court, promising to review the records prior to trial in anticipa-tion of a subsequent motion to allow an expert to pre-sent testimony pertaining thereto. By the time jury selection commenced on March 21, 2013, the records had been produced to the clerk, but the court indicated that it was awaiting a motion by the defendant for the admission of the privileged records before reviewing them.[6]

Shortly before the commencement of the evidentiary portion of the trial, the defendant filed a motion for an evidentiary hearing to present the testimony of the victim's psychiatrist, and, the next day, the court con-ducted a hearing on the defendant's request. At the hearing, the defendant argued that his right of confron-tation under the sixth amendment to the United States constitution outweighed any privilege that might exist with respect to the victim's psychiatric records, point-ing out that the policies safeguarding the psychiatrist-patient privilege are less compelling when the patient is deceased. The state maintained that the right of con-frontation was not implicated when, as in the present case, the patient was deceased and, therefore, would not be testifying. The state further argued that, without a waiver of the privilege by the victim's authorized representative, the psychiatrist-patient privilege barred even the court from reviewing the documents in cam-era. Although several bottles of medication prescribed for the victim were found at the victim's home, the state argued that information about the victim's prescription medication usage, without testimony from his psychia-trist or corroboration from his psychiatric records, would be either irrelevant or inadmissible as propen-sity evidence.[7]

Reconsidering its prior ruling, the trial court agreed with the state in concluding that "evidence relating to communications and records concerning the diagnosis or treatment of a patient's mental condition" was privi-leged by statute and did not fall under any applicable statutory exception. The trial court further concluded that it lacked the authority to create an extrastatutory exception to the statutory psychiatrist-patient privilege, relying, inter alia, on *State* v. *Kemah*, 289 Conn. 411, 428, 957 A.2d 852 (2008) ("in the absence of express consent by the patient, courts have no authority to

create nonstatutory exceptions to the general rule of nondisclosure" [internal quotation marks omitted]). Finally, the court observed that, although *State* v. *Esposito*, supra, 192 Conn. 179–89, and several subsequent cases, permit the court to strike a witness' testimony to protect a defendant's right of confrontation, they do not allow the defendant to access privileged information without the patient's consent. Because the defendant had been unable to procure consent from the victim's authorized representative; see footnote 6 of this opinion; the court denied the motion. The defendant subsequently was convicted and sentenced to ten years incarceration, suspended after eight years, followed by a five year term of probation.

For the first time on appeal, the defendant claims that the trial court violated his sixth amendment right to present a defense and to compulsory process by refusing to examine the victim's psychiatric records or to consider testimony by the victim's psychiatrist in camera.[8] The defendant contends that, contrary to the determination of the trial court, the psychiatrist-patient privilege is not so unyielding that psychiatric records cannot be disclosed in the interest of justice—initially, to the court only, for in camera inspection—when, as here, the psychiatric records of a homicide victim are alleged to be relevant to the accused's claim of self-defense.

The state argues that the defendant's constitutional claims are unpreserved and that the record is inadequate for review under *Golding*. We agree with the state that the defendant's claims are unpreserved because he relies on different constitutional provisions in this court than he did in the trial court. Nevertheless, as we discuss more fully herein, because his claim is of constitutional magnitude, he nevertheless is entitled to review under *Golding* if the record is adequate for such review. We agree with the state that it is not. Because, however, the issue of reviewability turns on our assessment of the relationship between the victim's privilege and the defendant's constitutional right to present a defense, we first address the question of whether, and, if so, when, a defendant in a homicide case is entitled to an in camera review of the victim's psychiatric records.[9] For the reasons set forth herein, we conclude that a trial court, in certain circumstances, may be constitutionally required to review in camera the privileged psychiatric records of a homicide victim to determine whether information contained therein supports a claim of self-defense. Mindful of the important policies underlying this state's statutory psychiatrist-patient privilege, however, we further conclude that, before a court may undertake such an in camera review, the accused first must demonstrate a compelling need for the privileged records, a showing predicated on the relevance of the records to the claim of self-defense, the potential significance of the records in establishing that defense, and

the unavailability of alternative sources of similar information.

The psychiatrist-patient privilege, which is codified at § 52-146e (a), prohibits the disclosure of any communications and records that identify a person who has communicated with a psychiatrist for the purpose of diagnosis or treatment without the express prior consent of the patient or his authorized representative.[10] The privilege applies to "all oral and written communications and records thereof relating to diagnosis or treatment of a patient's mental condition between the patient and a psychiatrist . . . ." General Statutes § 52-146d (2). In general, we have interpreted the privilege broadly and its exceptions narrowly. See *Falco* v. *Institute of Living*, 254 Conn. 321, 328, 757 A.2d 571 (2000). Indeed, we have sometimes used language suggesting that, when no statutory exception applies, the privilege is absolute. See *State* v. *Jenkins*, 271 Conn. 165, 183, 856 A.2d 383 (2004) ("in the absence of express consent by the patient, courts have no authority to create nonstatutory exceptions to the general rule of nondisclosure"); *Falco* v. *Institute of Living*, supra, 330 ("[T]he legislature has narrowly drafted the exceptions to the general rule against disclosure after carefully balancing the important countervailing considerations . . . . The inference that we draw is that the legislature did not intend to save other cases from the general rule." [Citations omitted; footnote omitted.]). "The broad sweep of the statute covers not only disclosure to a defendant or his counsel, but also disclosure to a court even for the limited purpose of an in camera examination." *State* v. *Esposito*, supra, 192 Conn. 178.

In *Esposito*, the defendant, Andrew Esposito, who was accused of sexual assault and kidnapping; id., 167; moved to have the complainant's privileged mental health records reviewed by the court in camera to determine whether they contained information concerning the ability of the complainant to observe, recollect or recount her experience. Id., 176. We concluded that an accused is entitled to an in camera review of privileged mental health records if he shows that "there is reasonable ground to believe that the failure to produce the information is likely to impair [his] right of confrontation such that the witness' direct testimony should be stricken." Id., 179. When a witness refuses to consent to an in camera review following such a showing, "then the court may be obliged to strike the testimony of the witness." Id., 179–80. In that case, however, the court concluded that Esposito had failed to make "a threshold showing that at any pertinent time [the complainant] had a mental problem which affected her testimonial capacity in any respect, let alone to a sufficient degree to warrant further inquiry." Id., 180. In reaching its determination, the court noted that there was nothing in the complainant's testimony to indicate difficulty recalling or narrating the events relating to the assault,

and that counsel for Esposito had not inquired about the reason for an earlier psychiatric hospitalization. Id.

Subsequent to our decision in *Esposito*, we considered similar claims involving the right of access to privileged records for the purpose of determining whether they contained material relevant to the impeachment of testifying witnesses. See, e.g., *State* v. *Slimskey*, 257 Conn. 842, 853–59, 779 A.2d 723 (2001) (sexual assault victim's privileged school records); *State* v. *Pratt*, 235 Conn. 595, 597, 606–608, 669 A.2d 562 (1995) (witness' juvenile court psychological and psychiatric records); *State* v. *Kulmac*, 230 Conn. 43, 56–59, 644 A.2d 887 (1994) (sexual assault victim's Department of Children and Youth Services records); *State* v. *Joyner*, 225 Conn. 450, 476–79, 625 A.2d 791 (1993) (mental health and substance abuse records of victim); *State* v. *Kelly*, 208 Conn. 365, 377–79, 545 A.2d 1048 (1988) (complaining witness' psychiatric and counseling records). This appeal, by contrast, involves the psychiatric records of a homicide victim, and, therefore, the traditional confrontation clause issues concerning the impeachment of a state's witness are not implicated. Consequently, we are presented with an issue of first impression for this court, namely, whether an accused who raises a claim of self-defense is nonetheless entitled to an in camera review of a homicide victim's privileged records.[11]

The conflicting interests in the present case are substantial. That the victim held a broad statutory privilege is clear; but so, too, is our recognition that an accused must be guaranteed "a meaningful opportunity to present a complete defense."[12] (Internal quotation marks omitted.) *State* v. *Cerreta*, 260 Conn. 251, 260, 796 A.2d 1176 (2002), quoting *California* v. *Trombetta*, 467 U.S. 479, 485, 104 S. Ct. 2528, 81 L. Ed. 2d 413 (1984). As the United States Supreme Court has observed, "[t]he right to the production of all evidence at a criminal trial . . . has constitutional dimensions. The [s]ixth [a]mendment explicitly confers upon every defendant in a criminal trial the right 'to be confronted with the witnesses against him' and 'to have compulsory process for obtaining witnesses in his favor.' Moreover, the [f]ifth [a]mendment also guarantees that no person shall be deprived of liberty without due process of law. It is the manifest duty of the courts to vindicate those guarantees, and to accomplish that it is essential that all relevant and admissible evidence be produced." *United States* v. *Nixon*, 418 U.S. 683, 711, 94 S. Ct. 3090, 41 L. Ed. 2d 1039 (1974). The question posed by this appeal, therefore, is whether the right to present such evidence must be enforced to the detriment of a homicide victim's statutory privilege and, if so, under what circumstances.

Evidentiary privileges, unlike most other evidentiary rules,[13] were not conceived to advance the accuracy and reliability of the privileged materials but, rather,

to safeguard certain desirable societal values. *Falco* v. *Institute of Living*, supra, 254 Conn. 332 ("Evidentiary privileges exist for 'the protection of interests and relationships which, rightly or wrongly, are regarded as of sufficient social importance to justify some sacrifice of availability of evidence relevant to the administration of justice.' 1 C. McCormick, Evidence [4th Ed. 1992] § 72, p. 269."). Thus, in recognizing a federal psychotherapist-patient privilege, the United States Supreme Court explained that "[e]ffective psychotherapy . . . depends upon an atmosphere of confidence and trust in which the patient is willing to make a frank and complete disclosure of facts, emotions, memories, and fears. Because of the sensitive nature of the problems for which individuals consult psychotherapists, disclosure of confidential communications made during counseling sessions may cause embarrassment or disgrace. For this reason, the mere possibility of disclosure may impede development of the confidential relationship necessary for successful treatment." *Jaffee* v. *Redmond*, 518 U.S. 1, 10, 116 S. Ct. 1923, 135 L. Ed. 2d 337 (1996); accord *Falco* v. *Institute of Living*, supra, 254 Conn. 328. In *Jaffee*, the plaintiff in a civil action claimed he was entitled to access to the mental health records of the defendant police officer, who had shot and killed a member of the plaintiff's family. *Jaffee* v. *Redmond*, supra, 4. In rejecting the plaintiff's claim, the court observed that the policies underlying the psychotherapist-patient privilege were "sufficiently important" to outweigh the probative value of the psychiatric evidence in that case, noting, inter alia, that, "[w]ithout a privilege, much of the desirable evidence to which litigants such as [the plaintiff] seek access—for example, admissions against interest by a party—is unlikely to come into being." Id., 9–10, 12.

Against the important public policy interests recognized by the court in *Jaffee* stand the liberty interests of a criminal defendant and the societal interest in a fair adjudication of criminal causes. In weighing these interests, the views of other courts have been decidedly mixed.[14] Some courts have found mental health privileges virtually impenetrable. See, e.g., *In re Crisis Connection, Inc.*, 949 N.E.2d 789, 802 (Ind. 2011) (defendant had no constitutional right to in camera review of child molestation victim's crisis center mental health records). Others have been more receptive to the arguments of criminal defendants, especially when in camera review procedures are available to protect witnesses' privacy. See, e.g., *People* v. *Stanaway*, 446 Mich. 643, 649–50, 521 N.W.2d 557 (1994) ("where a defendant can establish a reasonable probability that the privileged records are likely to contain material information necessary to his defense, an in camera review of those records must be conducted"), cert. denied sub nom. *Michigan* v. *Caruso*, 513 U.S. 1121, 115 S. Ct. 923, 130 L. Ed. 2d 802 (1995); see also E.

Imwinkelried & N. Garland, Exculpatory Evidence: The Accused's Constitutional Right to Introduce Favorable Evidence (3d Ed. 2004) § 10-6, p. 389 ("[w]hether the privilege was a common-law creation . . . or of statutory origin . . . given a compelling showing of defense need for the evidence the courts have been willing to surmount the privilege").

Only a very few cases, however, have addressed the precise issue presented by this appeal: whether an accused has a right to have the privileged mental health records of a homicide victim examined in connection with a self-defense claim.[15] In *United States* v. *Hansen*, 955 F. Supp. 1225, 1226 (D. Mont. 1997), the United States District Court concluded that a defendant's rights may prevail over a victim's privilege in such circumstances. As in the present case, the defendant in *Hansen* sought the psychiatric records of a homicide victim to support a claim of self-defense. Id., 1225–26. The District Court ordered the records produced, emphasizing the potential evidentiary benefit of psychiatric records in cases in which the accused is charged with homicide and the mental state of the victim is a key element of the defense, and distinguishing such cases from *Jaffee*, a civil case in which the court explicitly found that the likely evidentiary benefit of overriding the privilege would be " 'modest.' " Id., 1226, quoting *Jaffee* v. *Redmond*, supra, 518 U.S. 11.[16] The District Court also noted that a homicide victim's interest in preventing disclosure is greatly diminished by his death. *United States* v. *Hansen*, supra, 1226. Thus, even though the court in *Hansen* recognized that the public interest in preventing disclosure persists after the patient's death—insofar as disclosure might dissuade others from seeking treatment—it found that, in that case, "the defendant's need for the privileged material outweigh[ed] this interest." Id.; see also *State* v. *Connor*, 215 Ariz. 553, 558, 561, 161 P.3d 596 (App. 2007) (defendant claiming self-defense failed to make heightened showing of necessity required to overcome homicide victim's psychiatrist-patient privilege); *State* v. *Heemstra*, 721 N.W.2d 549, 563 (Iowa 2006) (requiring limited disclosure of homicide victim's mental health information when information "might reasonably bear on the defendant's possibility of success in supporting his claim of self-defense"); but see *State* v. *Neiderbach*, 837 N.W.2d 180, 194–95 (Iowa 2013) (requiring in camera review when defendant shows "reasonable probability" that privileged records "may likely contain exculpatory information that is not available from any other source").[17]

We, too, are persuaded that, in certain exceptional circumstances, the interests of an accused must prevail over a homicide victim's psychiatrist-patient privilege. More specifically, when the accused's right to present a claim of self-defense is materially impeded by the deceased victim's psychiatrist-patient privilege, it is no

less important that we seek to vindicate that right than it is in our confrontation clause cases, such as *State* v. *Esposito*, supra, 192 Conn. 166. We believe, furthermore, that the in camera review procedure adopted in *Esposito* for confrontation purposes also serves the ends of justice in the present circumstances. See id., 179–80.

We reach this conclusion for a number of reasons. First, we agree with the court in *Hansen* that the balance of equities in criminal cases involving the psychiatrist-patient privilege of a homicide victim is significantly different than in civil cases like *Jaffee*. The interests of society and the accused in enabling the accused to present evidence material to his defense, thereby safeguarding the accused's right to a fair adjudication of guilt and innocence, reach their zenith in a murder prosecution. See *Ake* v. *Oklahoma*, 470 U.S. 68, 78–79, 105 S. Ct. 1087, 84 L. Ed. 2d 53 (1985) ("The private interest in the accuracy of a criminal proceeding that places an individual's life or liberty at risk is almost uniquely compelling. . . . The [s]tate's interest in prevailing at trial—unlike that of a private litigant—is necessarily tempered by its interest in the fair and accurate adjudication of criminal cases."). At the same time, the personal interest of the victim in maintaining the absolute secrecy of his or her psychiatric records is diminished by the death of the victim. We find it unlikely, moreover, that authorizing disclosure of those records in such limited circumstances will significantly reduce the number of individuals choosing to confide in counselors and psychotherapists. An in camera review is a relatively modest intrusion into a victim's mental health history, and that narrow exception to the psychiatrist-patient privilege—an exception available only when the court finds it clearly necessary in order to safeguard the accused's fair trial rights—is unlikely to prove any more of a deterrent to persons seeking mental health treatment than that already attributable to existing statutory exceptions.[18] Consequently, we agree with the defendant that, when an accused makes a sufficient preliminary showing that his constitutional right to present a defense can be protected only by an in camera examination of the victim's psychiatric records, a trial court must undertake such a review.[19]

We now turn to the nature of the preliminary showing required to trigger an in camera review. In *Esposito*, we determined that before an in camera review of psychiatric records is conducted, "there must be a showing that there is *reasonable ground to believe that the failure to produce the information is likely to impair the defendant's right of confrontation* such that the witness' direct testimony should be stricken." (Emphasis added.) *State* v. *Esposito*, supra, 192 Conn. 179.[20] In applying this standard, we have "urged trial courts to permit the defendant a certain latitude in his attempt to make [the preliminary showing required to obtain an

in camera inspection of privileged records].” (Internal quotation marks omitted.) *State* v. *Bruno*, 236 Conn. 514, 531, 637 A.2d 1117 (1996). We agree with the state, however, that a more stringent standard should apply when, as here, the psychiatric records being sought are those of a homicide victim. As we explained previously, our confrontation clause cases have not forced the disclosure, even in camera, of privileged information without consent. Under *Esposito*, a witness may simply elect not to waive the psychiatrist-patient privilege and not to testify, thereby foreclosing any public disclosure of the witness’ psychiatric records, while protecting the accused from testimony that, because of the privilege, would not be subject to constitutionally adequate cross-examination. In the present case, however, no such option exists because the information sought relates not to the victim’s ability to observe, remember, and recount an event but to his or her psychological state during the fatal encounter, and, in some cases, the only way to obtain that information is by surmounting the victim’s privilege.

In light of the intrusiveness of this procedure relative to the consent-driven approach to disclosure established by *Esposito*, we believe that a defendant must demonstrate a compelling need for the court to undertake an in camera review of a deceased victim’s privileged psychiatric records. In assessing the defendant’s need, courts should consider, among any other relevant considerations, the centrality of the privileged materials to the defendant’s claim of self-defense, the potential significance of those materials in establishing the defense, and the unavailability of less intrusive sources for the same information. See, e.g., *State* v. *Saunders*, 267 Conn. 363, 385, 838 A.2d 186 (“[t]he primary consideration in determining whether a trial court’s ruling violated a defendant’s right to present a defense is the centrality of the excluded evidence to the claim or claims raised by the defendant at trial” [internal quotation marks omitted]), cert. denied, 541 U.S. 1036, 124 S. Ct. 2113, 158 L. Ed. 2d 722 (2004); *State* v. *Peeler*, 265 Conn. 460, 474, 828 A.2d 1216 (2003) (“When either side in a criminal case seeks to call as a witness either a prosecutor or a defense attorney who is or has been professionally involved in the case, that party must demonstrate that the testimony is necessary and not merely relevant, and that all other available sources of comparably probative evidence have been exhausted. . . . This compelling need test strikes the appropriate balance between, on the one hand, the need for information and, on the other hand, the potential adverse effects on the attorney-client relationship and the judicial process in general.” [Citation omitted; internal quotation marks omitted.]), cert. denied, 541 U.S. 1029, 124 S. Ct. 2094, 158 L. Ed. 2d 710 (2004); *State* v. *Slimskey*, supra, 257 Conn. 859 (“[h]aving determined that the evidence in issue was especially probative and having concluded

that there was no other available means of inquiry into the victim's propensity to lie, we necessarily have concluded that the confrontation clause requires the disclosure").[21]

When, after an in camera review, the court determines that the privileged information substantially—that is, materially—supports the defendant's claim of self-defense, it must disclose such material to the defendant. See *State* v. *Santiago*, 305 Conn. 101, 235–36, 49 A.3d 566 (2012) (after in camera review, trial court must disclose "any records that are material to [the defendant's] case in mitigation"), superseded in part on other grounds, 318 Conn. 1, 122 A.3d 1 (2015); *State* v. *Esposito*, supra, 192 Conn. 180 ("relevant material" must be disclosed); *Pennsylvania* v. *Ritchie*, 480 U.S. 39, 58, 107 S. Ct. 989, 84 L. Ed. 2d 40 (1987) (information " 'material' " to defense must be disclosed); cf. C. Fishman, "Defense Access to a Prosecution Witness's Psychotherapy or Counseling Records," 86 Or. L. Rev. 1, 51 (2007) ("[a] judge must disclose information to the defense that is otherwise protected by a patient-psychotherapist or similar privilege if the information casts significant doubts upon the truthfulness or accuracy of the [witness'] testimony" [footnote omitted]); but see *State* v. *Storlazzi*, 191 Conn. 453, 459, 464 A.2d 829 (1983) (requiring disclosure of " 'especially probative' " material). We believe that this procedure properly safeguards both the constitutional rights of criminal defendants and, to the extent possible, the privacy of the victim and the societal values underlying the psychiatrist-patient privilege.

We turn now to the state's claim that the defendant's constitutional claims were not adequately preserved at trial and that the defendant is not entitled to review under *Golding* because the record is inadequate for such review. We agree with the state's contention.[22]

Generally, this court is not required to consider a claim "unless it was distinctly raised at the trial or arose subsequent to the trial." Practice Book § 60-5. A claim must be "so stated as to bring to the attention of the court the *precise* matter on which its decision is being asked." (Emphasis in original; internal quotation marks omitted.) *State* v. *Carter*, 198 Conn. 386, 396, 503 A.2d 576 (1986); id., 396–97 (objection to one aspect of court's definition of insanity did not preserve other objections to definition). In the present case, although the defendant clearly registered his disagreement with the trial court's refusal to review or disclose the victim's privileged records, he did not bring before the court the "precise issue"—the due process and right to present a defense claims—forming the basis of this appeal, and, therefore, those claims are not preserved. It is well established, however, that an unpreserved claim is reviewable under *Golding* when "(1) the record is adequate to review the alleged claim of error; (2) the claim

is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Footnote omitted.) *State* v. *Golding*, supra, 213 Conn. 239–40.

When reviewing claims under *Golding*, "we will not attempt to supplement or reconstruct the record, or to make factual determinations, in order to decide the defendant's claim." Id., 240. Indeed, "[t]he first prong of *Golding* was designed to avoid remands for the purpose of supplementing the record." *State* v. *Stanley*, 223 Conn. 674, 690, 613 A.2d 788 (1992). In *State* v. *Moye*, 214 Conn. 89, 98–99, 570 A.2d 209 (1990), for instance, the defendant argued that the trial court had violated his right of confrontation, even though "[n]othing in the record suggest[ed] that the defendant attempted to cross-examine the victim on the impact of her arrest and detention." Consequently, we held that the record was inadequate for review, observing that "[a] defendant cannot claim a confrontation clause violation regarding an issue on which he chose not to cross-examine the witness." Id., 99. Similarly, in *State* v. *Roger B.*, 297 Conn. 607, 615, 999 A.2d 752 (2010), this court concluded that the record "simply [did] not contain a sufficient underlying set of facts for [the court] to assess whether the defendant suffered actual prejudice as a result of [the] delay in seeking an arrest warrant," an essential element of a due process claim, because there was no evidence "indicating that the defendant attempted to locate witnesses and was unsuccessful in doing so." As a result, we denied review of the claimed due process violation. Id., 616.

We agree with the state that the defendant's claims in the present case are unreviewable for similar reasons. Here, the alleged constitutional violations are based on the trial court's refusal to review the victim's psychiatric records in camera. The defendant contends that such a review may have revealed a psychiatric diagnosis relating to aggressive behavior, and also would have enabled the defendant to present testimony about the potential effects of certain prescription medications on the victim's behavior. We have concluded, however, that, before the trial court is required to undertake an in camera review of a homicide victim's psychiatric records, the defendant must show that a compelling need exists for such review. The defendant in the present case has failed to do so.

Although it is certainly possible that a psychiatric disorder involving aggressive behavior would be relevant to the defendant's claim of self-defense, in this case, the defendant presented insufficient evidence that the victim suffered from such a condition, and, there-

fore, his evidence was insufficient to demonstrate that the victim's psychiatric records were necessary to his defense. Although the defendant testified that the victim suffered from depression and attended psychiatric counseling, the mere existence of a mental condition, without any showing of relevance, will not suffice to justify intrusion into the victim's privileged medical records.[23] Cf. *State* v. *Joyner*, 225 Conn. 450, 478–79, 625 A.2d 791 (1993) ("[I]t was not enough for the defendant to show merely that the victim had consumed alcohol on the night of the assault and had undergone alcohol treatment thereafter. We have never held that a history of alcohol or drug abuse or treatment automatically makes a witness fair game for disclosure of psychiatric records to a criminal defendant."); see also *State* v. *Hubbard*, Docket No. A14-1259, 2015 WL 4714802, *10 (Minn. App. August 10, 2015) ("[b]ecause [the] appellant made no specific showing connecting the [mental-health] treatment records to a propensity toward violence, did not provide information on the dates of or reasons for treatment, and did not establish a connection between the juvenile court records and the treatment records, we cannot conclude that the district court abused its discretion in denying in camera review of the treatment records"). Indeed, in *Esposito*, we made in camera review explicitly contingent on the existence of a *relevant* mental condition, observing that Esposito had "failed to make a threshold showing that at any pertinent time [the witness] had a mental problem which affected her testimonial capacity in any respect," when nothing in her testimony suggested any problems with recall and the defendant presented no other evidence that the records might bear on her testimonial capacities. *State* v. *Esposito*, supra, 192 Conn. 180; see also *State* v. *Bruno*, supra, 236 Conn. 527–28 (trial court did not abuse its discretion in refusing to inspect records in camera when defendant presented no evidence, aside from certain " 'interpersonal problems,' " of any cognitive deficiency or any relationship between earlier psychiatric hospitalization and witness' testimonial capacities at trial).

Similarly, nothing in the record establishes the necessary link between the victim's medications and aggressive behavior.[24] The defendant presented no testimony that taking or not taking such medications could increase aggressiveness; nor did he present evidence that such medications are sometimes prescribed to mitigate preexisting aggressive behavior. Moreover, nothing in the record suggests that the defendant was precluded from offering such expert testimony as might have established the desired connection. Indeed, the court permitted the defendant to testify, over the state's objection, that the victim was taking certain medications, including Risperdal and Librium, and that those medications were being used to treat the victim's depression.[25] The defendant, however, failed to move

to introduce expert testimony on the potential effects of those medications.[26] In the absence of such evidence, the record is inadequate to determine the relevance of the victim's medications to the defendant's claim of self-defense. We have no way of knowing whether they could have increased his aggressiveness, or whether they are even prescribed to treat aggressiveness.[27] See, e.g., *State* v. *Brunetti*, 279 Conn. 39, 63, 901 A.2d 1 (2006) ("[w]ithout the necessary factual and legal conclusions furnished by the trial court . . . any decision made by us respecting [the defendant's claims] would be entirely speculative" [internal quotations marks omitted]), cert. denied, 549 U.S. 1212, 127 S. Ct. 1328, 167 L. Ed. 2d 85 (2007).

Because the defendant provided no other evidence demonstrating that the victim's psychiatric records were necessary to his defense, he cannot make the required preliminary showing, without improperly supplementing the record on appeal, that he was entitled to an in camera review of those records. Accordingly, the defendant is not entitled to review of his unpreserved claim that the trial court's failure to conduct an in camera review of the records deprived him of his right to present a defense.

The judgment is affirmed.

In this opinion the other justices concurred.

* This case originally was scheduled to be argued before a panel of this court consisting of Chief Justice Rogers and Justices Palmer, Zarella, Eveleigh, McDonald, and Robinson. Thereafter, Justice Zarella retired from this court and did not participate in the consideration of this decision.

[1] General Statutes § 52-146d provides in relevant part: "As used in sections 52-146d to 52-146i, inclusive:

"(1) 'Authorized representative' means (A) a person empowered by a patient to assert the confidentiality of communications or records which are privileged under sections 52-146c to 52-146i, inclusive, or (B) if a patient is deceased, his personal representative or next of kin, or (C) if a patient is incompetent to assert or waive his privileges hereunder, (i) a guardian or conservator who has been or is appointed to act for the patient, or (ii) for the purpose of maintaining confidentiality until a guardian or conservator is appointed, the patient's nearest relative;

"(2) 'Communications and records' means all oral and written communications and records thereof relating to diagnosis or treatment of a patient's mental condition between the patient and a psychiatrist, or between a member of the patient's family and a psychiatrist, or between any of such persons and a person participating under the supervision of a psychiatrist in the accomplishment of the objectives of diagnosis and treatment, wherever made, including communications and records which occur in or are prepared at a mental health facility;

"(3) 'Consent' means consent given in writing by the patient or his authorized representative;

* * *

"(6) 'Patient' means a person who communicates with or is treated by a psychiatrist in diagnosis or treatment;

"(7) 'Psychiatrist' means a person licensed to practice medicine who devotes a substantial portion of his time to the practice of psychiatry, or a person reasonably believed by the patient to be so qualified."

[2] General Statutes § 52-146e provides: "(a) All communications and records as defined in section 52-146d shall be confidential and shall be subject to the provisions of sections 52-146d to 52-146j, inclusive. Except as provided in sections 52-146f to 52-146i, inclusive, no person may disclose or transmit any communications and records or the substance or any part or any resume thereof which identify a patient to any person, corporation or governmental agency without the consent of the patient or his author-

ized representative.

"(b) Any consent given to waive the confidentiality shall specify to what person or agency the information is to be disclosed and to what use it will be put. Each patient shall be informed that his refusal to grant consent will not jeopardize his right to obtain present or future treatment except where disclosure of the communications and records is necessary for the treatment.

"(c) The patient or his authorized representative may withdraw any consent given under the provisions of this section at any time in a writing addressed to the person or office in which the original consent was filed. Withdrawal of consent shall not affect communications or records disclosed prior to notice of the withdrawal."

[3] The records sought were not covered by any exception to the psychiatrist-patient privilege. Those exceptions are set forth in General Statutes § 52-146f, which provides in relevant part: "Consent of the patient shall not be required for the disclosure or transmission of communications or records of the patient in the following situations as specifically limited:

"(1) Communications or records may be disclosed to other persons engaged in the diagnosis or treatment of the patient or may be transmitted to another mental health facility to which the patient is admitted for diagnosis or treatment if the psychiatrist in possession of the communications or records determines that the disclosure or transmission is needed to accomplish the objectives of diagnosis or treatment. . . .

"(2) Communications or records may be disclosed when the psychiatrist determines that there is substantial risk of imminent physical injury by the patient to himself or others or when a psychiatrist, in the course of diagnosis or treatment of the patient, finds it necessary to disclose the communications or records for the purpose of placing the patient in a mental health facility, by certification . . . .

"(3) . . . the name, address and fees for psychiatric services to a patient may be disclosed to individuals or agencies involved in the collection of fees for such services. . . .

"(4) Communications made to or records made by a psychiatrist in the course of a psychiatric examination ordered by a court or made in connection with the application for the appointment of a conservator by the Probate Court for good cause shown may be disclosed at judicial or administrative proceedings in which the patient is a party, or in which the question of his incompetence because of mental illness is an issue, or in appropriate pretrial proceedings . . . .

"(5) Communications or records may be disclosed in a civil proceeding in which the patient introduces his mental condition as an element of his claim or defense, or, after the patient's death, when his condition is introduced by a party claiming or defending through or as a beneficiary of the patient and the court or judge finds that it is more important to the interests of justice that the communications be disclosed than that the relationship between patient and psychiatrist be protected.

"(6) Communications or records may be disclosed to (A) the Commissioner of Public Health in connection with any inspection, investigation or examination of an institution . . . or (B) the Commissioner of Mental Health and Addiction Services in connection with any inspection, investigation or examination authorized . . . .

"(7) Communications or records may be disclosed to a member of the immediate family or legal representative of the victim of a homicide committed by the patient where such patient has, on or after July 1, 1989, been found not guilty of such offense by reason of mental disease or defect . . . provided . . . such communications shall only be available during the pendency of, and for use in, a civil action relating to such person found not guilty . . . .

"(8) If a provider of behavioral health services that contracts with the Department of Mental Health and Addiction Services requests payment, the name and address of the person, a general description of the types of services provided, and the amount requested shall be disclosed to the department . . . ."

[4] The state contested the defendant's claim of self-defense claiming, inter alia, that the evidence demonstrated that the defendant engaged in conduct after the shooting for the sole purpose of creating the impression of a struggle.

[5] Two of the motions sought to compel production of psychiatric records from the Veterans Administration Hospital in West Haven for in camera inspection, and a third motion sought to compel testimony from the victim's treating psychiatrist.

[6] Prior to trial, the defendant sought to have the victim's authorized repre-

sentative waive the psychiatrist-patient privilege on behalf of the victim as permitted under §§ 52-146d (1) and 52-146e (a). The authorized representative, however, declined to waive the privilege on the victim's behalf.

[7] On April 18, 2013, the state also filed a motion in limine seeking to preclude *any* expert testimony regarding the effects of medications found at the scene of the crime, arguing that those medications themselves were protected by the psychiatrist-patient privilege and that, in any case, such testimony would be speculative without evidence of ingestion by the victim. The court declined to issue a blanket ruling on the motion, however, preferring to address the issue, if it arose, in the specific context in which the defendant sought to introduce testimony or other evidence concerning the prescriptions.

[8] In his brief, the defendant asserts that the court's ruling also implicates his right of confrontation. At oral argument, however, he conceded that his claim is predicated on the right to present a defense, to due process, and to compulsory process. We agree and, consequently, do not address the defendant's confrontation clause rights.

[9] The defendant's claim that he has a constitutional right to in camera review of the victim's psychiatric records insofar as those records are material to his claim of self-defense gives rise to a pure question of law, over which our review is plenary. See *State* v. *Kemah*, supra, 289 Conn. 421–22 (exercising plenary review to determine whether privilege was waived by disclosure of records to police).

[10] For purposes of this appeal, the parties do not contest the applicability of the statute to the victim's psychiatric records; nor do they claim error in the trial court's ruling that none of the statutory exceptions to the privilege applies.

[11] In *State* v. *Santiago*, 305 Conn. 101, 49 A.3d 566 (2012), superseded in part on other grounds, 318 Conn. 1, 122 A.3d 1 (2015), this court also endorsed an in camera review procedure for materials outside the scope of the confrontation right. In that case, this court held that, once an accused in a death penalty case establishes reasonable grounds to believe that privileged records contain information material to his case in mitigation, a trial court is required to conduct an in camera review of the records, noting that we had used such a procedure in *Esposito*. Id., 222 and n.109, 235. As in the present case, *Santiago* presented no confrontation clause concerns, so the usual remedy of striking the witness' testimony would not vindicate the defendant's constitutional rights. Id., 225 and n.111. The holding in *Santiago*, however, implicated not only the fourteenth amendment due process right, but also the eighth amendment right to have a jury consider mitigation evidence in a death penalty case. Id., 226. Thus, although *Santiago* suggests a possible alternative constitutional basis for an accused's constitutional right to present exculpatory evidence, it does not definitively resolve the issues presented by this case.

[12] The right to present a defense, though deeply rooted, rests on somewhat indeterminate grounds—at times, its existence has been attributed to the fourteenth amendment and, at times, to various clauses of the sixth amendment. See, e.g., *Williams* v. *Lord*, 996 F.2d 1481, 1483 (2d Cir. 1993) ("Although the source of [the] right [to present a defense] is somewhat unclear, its existence is well established. As the Supreme Court explained: Whether rooted directly in the [d]ue [p]rocess [c]lause of the [f]ourteenth [a]mendment or in the [c]ompulsory [p]rocess or [c]onfrontation [c]lauses of the [s]ixth [a]mendment, the [c]onstitution guarantees criminal defendants a meaningful opportunity to present a complete defense." [Internal quotation marks omitted.]), cert. denied, 510 U.S. 1120, 114 S. Ct. 1073, 127 L. Ed. 2d 391 (1994). Nonetheless, we have held that the right to present a defense is, essentially, "the right to present the defendant's version of the facts as well as the prosecution's to the jury so that it may decide where the truth lies." (Internal quotation marks omitted.) *State* v. *Carter*, 228 Conn. 412, 422, 636 A.2d 821 (1994). As a result, we have recognized that the exclusion of evidence relating to a homicide victim's violent character may deprive a defendant of his right to fairly present a claim of self-defense. Id., 417 (concluding that defendant was entitled to new trial because trial court improperly excluded evidence of victim's convictions for crimes material to defendant's claim of self-defense); *State* v. *Miranda*, 176 Conn. 107, 114, 405 A.2d 622 (1978) ("in a homicide prosecution where the accused has claimed self-defense, the accused may show that the deceased was the aggressor by proving the deceased's alleged character for violence"); see also *United States* v. *Chee*, Docket No. 2:14-CR-00033 (KJD) (CWH), 2016 WL 3397683, *6 (D. Nev. June 14, 2016) (right to fair trial and to present

defense required in camera review of witness' privileged records); *State* v. *Osimanti*, 299 Conn. 1, 17, 6 A.3d 790 (2010) (trial court "did not deprive the defendant of his constitutional right to present his claim of self-defense and, specifically, to support it with evidence of the victim's violent character, as the defendant was able to introduce evidence to that effect in the form of the victim's lengthy criminal record and gang affiliations").

[13] We have observed that "[a] defendant is . . . bound by the rules of evidence in presenting a defense. . . . Although exclusionary rules of evidence cannot be applied mechanistically to deprive a defendant of his rights, the constitution does not require that a defendant be permitted to present every piece of evidence he wishes." (Internal quotation marks omitted.) *State* v. *Santana*, 313 Conn. 461, 470, 97 A.3d 963 (2014); id., 471 (defendant precluded from cross-examining witness on hearsay statements); see also *Nevada* v. *Jackson*, U.S. , 133 S. Ct. 1990, 1992–93, 186 L. Ed. 2d 62 (2013) (defendant precluded from presenting evidence of specific instances of conduct for purpose of attacking credibility); *State* v. *Cerreta*, supra, 260 Conn. 261 (exclusion of irrelevant evidence does not violate defendant's right to present defense); *State* v. *Hummel*, 483 N.W.2d 68, 72 (Minn. 1992) (petitioner was not entitled to in camera review of confidential medical records when he made no showing that file was relevant to defense theory).

[14] See C. Fishman, "Defense Access to a Prosecution Witness's Psychotherapy or Counseling Records," 86 Or. L. Rev. 1, 17–23 (2007) (identifying different approaches taken by lower courts to resolve conflict between criminal defendant's right to obtain exculpatory evidence and witness' right to bar disclosure of such evidence under facially unconditional statutory privilege).

[15] This may be, in part, because a number of legislatures have created statutory exceptions to mental health privileges in such circumstances. See, e.g., Ind. Code Ann. § 25-33-1-17 (LexisNexis 2016) ("[a] psychologist licensed under this article may not disclose any information acquired from persons with whom the psychologist has dealt in a professional capacity, except under the following circumstances: [1] Trials for homicide when the disclosure relates directly to the fact or immediate circumstances of said homicide"); Iowa Code Ann. § 622.10 (4) (a) (2) (a) (West Supp. 2017) (communications with mental health professionals absolutely privileged except when "[t]he defendant seeking access to privileged records under this section files a motion demonstrating in good faith a reasonable probability that the information sought is likely to contain exculpatory information that is not available from any other source and for which there is a compelling need for the defendant to present a defense in the case"); Wis. Stat. Ann. § 905.04 (4) (d) (West 2016) ("[t]here is no privilege in trials for homicide when the disclosure relates directly to the facts or immediate circumstances of the homicide"); see also Utah Ct. R. Ann. 506 (d) (1) (A) and (B) (LexisNexis 2013) (no privilege exists "[f]or communications relevant to an issue of the physical, mental, or emotional condition of the patient . . . in any proceeding in which that condition is an element of any claim or defense, or . . . after the patient's death, in any proceedings in which any party relies upon the condition as an element of the claim or defense").

[16] Although some courts have interpreted *Jaffee* as a strict bar to the disclosure of privileged mental health records; see, e.g., *United States* v. *Shrader*, 716 F. Supp. 2d 464, 472–73 (S.D. W. Va. 2010) (holding that stalking victim's psychotherapist-patient privilege is not subordinate to sixth amendment because "[e]xceptions to the privilege, even in the [s]ixth [a]mendment context, would . . . eviscerate the effectiveness of the privilege" [internal quotation marks omitted]), aff'd, 675 F.3d 300 (4th Cir. 2012), cert. denied, 568 U.S. 1049, 133 S. Ct. 757, 184 L. Ed. 2d 500 (2012); other courts have found the Supreme Court's decision in *Jaffe* to allow for more flexibility. See, e.g., *United States* v. *Chee*, 191 F. Supp. 3d 1150, 1154 (D. Nev. 2016) ("*Jaffe* left the lower courts with the task of reconciling this privilege with the constitutional rights of a criminal accused, noting that there are situations in which the privilege must give way").

[17] Some courts have also explicitly held that the accused's constitutional rights may prevail over the statutory privilege of a testifying witness, without requiring that the court give the witness the option to have her testimony stricken rather than divulge the privileged information. See, e.g., *Commonwealth* v. *Barroso*, 122 S.W.3d 554, 564–65 (Ky. 2003).

[18] Similarly, in breaching the executive privilege, the United States Supreme Court has observed that "[t]he interest in preserving confidentiality is weighty indeed and entitled to great respect. However, we cannot conclude that advisers will be moved to temper the candor of their remarks by the

infrequent occasions of disclosure because of the possibility that such conversations will be called for in the context of a criminal prosecution." *United States* v. *Nixon*, supra, 418 U.S. 712. We believe that individuals seeking counseling will find the prospect of a trial in which their records are requested by their murderer similarly remote. See E. Imwinkelried & N. Garland, supra, § 10-4, p. 363 ("When the courts [weigh the constitutional right to present a defense against an exclusionary rule of evidence], they see clear, indisputable costs: the suppression of relevant exculpatory evidence. The alleged benefits of evidentiary privileges, however, are much more speculative. A large number of laypersons do not realize that the privileges exist. Others would be willing to communicate even without a legal assurance of confidentiality. In this light, it is hardly surprising that many courts have invoked the accused's constitutional right to present evidence to surmount privileges.")

[19] In the circumstances of a criminal case, in which the public and the accused have a strong interest in ensuring that the accused receives a fair trial, we do not believe that our limited holding conflicts with the court's rejection in *Jaffe* of a "balancing component" that would make "the promise of confidentiality contingent upon a trial judge's later evaluation of the relative importance of the patient's interest in privacy and the evidentiary need for disclosure . . . ." *Jaffee* v. *Redmond*, supra, 518 U.S. 17.

[20] See also *State* v. *Pierson*, 201 Conn. 211, 228, 514 A.2d 724 (1986) (requiring voir dire of expert "[w]here there is any reasonable basis in the evidence for believing that psychiatric personnel may have information relating to the mental condition of a witness that might affect his testimony"). Other courts have articulated a rather wide variety of standards such that there is "no clear consensus" as to the necessary showing required to prompt an in camera inspection of privileged records. C. Fishman, "Defense Access to a Prosecution Witness's Psychotherapy or Counseling Records," 86 Or. L. Rev. 1, 50 (2007).

[21] See also *Bobo* v. *State*, 256 Ga. 357, 360, 349 S.E.2d 690 (1986) ("[i]n order to abrogate the psychiatrist-patient privilege, the defendant must make a showing of necessity, that is, that the evidence in question is critical to his defense and that substantially similar evidence is otherwise unavailable to him"); *State* v. *Peseti*, 101 Haw. 172, 182, 65 P.3d 119 (2003) ("[a]lthough it stands to reason that the right of confrontation via cross-examination . . . will not trump a statutory privilege in every case in which a conflict arises between the two, we believe that fundamental fairness entitles a defendant to adduce evidence of a statutorily privileged confidential communication at trial when the defendant demonstrates that: (1) there is a legitimate need to disclose the protected information; (2) the information is relevant and material to the issue before the court; and (3) the party seeking to pierce the privilege shows by a preponderance of the evidence that no less intrusive source for that information exists" [internal quotation marks omitted]); R. Weisberg, Note, "Defendant v. Witness: Measuring Confrontation and Compulsory Process Rights Against Statutory Communications Privileges," 30 Stan. L. Rev. 935, 967 (1978) ("First, the defendant must prove that the privileged evidence sought, considered within the context of all other evidence, probably would create a reasonable doubt as to the defendant's guilt. Second, the defense must show that no other available evidence could effectively accomplish the same evidentiary purpose." [Footnotes omitted.]).

[22] We disagree with the state, however, insofar as it maintains that the defendant induced the error complained of on appeal by invoking only the right of confrontation at trial. See *State* v. *Cruz*, 269 Conn. 97, 106, 848 A.2d 445 (2004). We agree that a finding of induced error is supportable when a party's claim on appeal will result in an inappropriate ambush of the trial court by, for instance, claiming error in an instruction that the party itself requested; see id.; or by expressly advising the court that it should not consider certain claims; see *State* v. *Brunetti*, 279 Conn. 39, 59 n.32, 901 A.2d 1 (2006) (stating, in dictum, that presenting claim on appeal that is directly contrary to express claim at trial may constitute induced error), cert. denied, 549 U.S. 1212, 127 S. Ct. 1328, 167 L. Ed. 2d 85 (2007). In the present case, the defendant did not prompt or otherwise induce the court to make an erroneous ruling. Rather, in the midst of an unsettled constitutional landscape, he simply relied on a weak argument. Nor has the trial court been ambushed on appeal. Indeed, the defendant presented that court with cases suggesting alternative grounds for providing in camera review, and the trial court's ruling broadly addressed the issue of statutory privilege itself, not the specific constitutional grounds abutting it. Indeed, the court

having stated unreservedly that it "does not have the authority to grant an extrastatutory exception," there is little reason to believe that its ruling would have been different had the defendant explicitly directed the court to alternative constitutional provisions.

The state also claims that the defendant induced any error by changing his request for relief. More specifically, the state maintains that, at trial, the defendant requested that the victim's psychiatrist be permitted to testify regarding the victim's mental health records, and that only on appeal did he request that the court review the privileged materials in camera. We think it is clear, however, that the trial court considered the issue of in camera review of the privileged records together with the issue of expert testimony. In fact, prior to reconsidering its decision at the hearing shortly before the commencement of evidence, the trial court granted the defendant's motion for an in camera review of the privileged records, and the state declared that the documents themselves were "the subject of the [evidentiary] hearing." In any event, both in camera review of privileged records and voir dire of mental health professionals concerning privileged unrecorded statements are rooted in the same concerns and both require the patient's consent. See *State* v. *Pierson*, 201 Conn. 211, 228, 514 A.2d 724 (1986). Thus, the absence of consent, combined with the death of the patient, presents the same essential problem in either case. As a result, whatever confusion prevailed at trial, the defendant's actions do not amount to an ambuscade on appeal.

[23] The defendant also testified that the victim's depression had become more pronounced in recent months and that he and the victim occasionally fought as a result. We acknowledge the possibility that such testimony might, in the absence of other available evidence about the victim's psychological condition, be sufficient to trigger an in camera review in the exercise of the trial court's discretion. Here, however, the failure to provide testimony regarding the effects of the victim's psychiatric medications, as explained hereinafter, renders the record inadequate to determine whether the defendant had a compelling need for the victim's psychological records or whether that need, if any, would have been met by expert testimony regarding the victim's medications.

[24] The defendant asserts that his own testimony about the victim's increasing aggressiveness, coupled with testimony that the victim was being treated by a psychiatrist, satisfies the preliminary showing required for in camera review. See footnote 23 of this opinion. He does not assert that evidence that the victim was taking medication, by itself, provides a sufficient showing. Indeed, in his brief to this court, he acknowledges that, although the medications prescribed to the victim are known, "[t]he unknowns are numerous, including the reasons why the medication was prescribed, and the impact those medications would have had on [the victim's] behavior, particularly when mixed with alcohol and marijuana."

[25] The transcript reveals the following exchange:

"[Defense Counsel]: Did you have occasion to accompany your brother for some of his visits to see [the psychiatrist]?

"[The Defendant]: Yes, I did.

"[Defense Counsel]: Now, did you ever see with your own eyes, okay, any of the medications that were prescribed by [the psychiatrist] for your brother?

"[The Defendant]: Yes.

"[Defense Counsel]: What were those medications?

"[The Defendant]: At first it was Prozac and Valium and then—that's what [a former psychiatrist] had had him on for a long time, the whole time he saw her, and then [the psychiatrist] continued that for—I don't want to say a short period of time, but he changed it from those two to Risperdal and Librium.

"[Defense Counsel]: Okay. And these are medications to treat his depression?

"[The Defendant]: Correct.

"[The Prosecutor]: Objection. I don't know what the foundation is, what he's being treated for and for being hearsay.

"The Court: No. I'll allow that in. He said that he knew the prescription. I'll allow it in at this point."

Defense counsel reiterated and underscored this testimony during his closing argument to the jury.

[26] The trial court reserved judgment on the state's motion in limine to preclude such testimony.

[27] This is precisely the kind of information that the defendant attempts

to convey on appeal through the use of materials from various Internet sources describing these medications. Such information, however, generally must be presented at trial, ordinarily via expert testimony. See *State* v. *Santos*, 146 Conn. App. 537, 557, 78 A.3d 230 (2013) (*Borden, J.*, dissenting) ("It should go without saying that, simply because a search on the Internet [or in a medical dictionary, for that matter] would disclose to defense counsel what a particular medical term may mean, does not mean that counsel would be in a position to use that meaning in a trial without presenting an expert witness to explain it. Counsel, having learned from the disclosed records that the witness had been diagnosed with schizoaffective disorder, and having consulted the Internet to learn what that means, cannot simply stand up and ask something like, 'Isn't it true, [witness], that your diagnosis of schizoaffective disorder bipolar type means that you may experience hallucinations, which means seeing, hearing or sensing things that are not there?' If challenged on the grounds that he is basing his question on matters not in evidence, what is he supposed to say? 'It's on the Internet'? And even if he could ask such a question, how could the witness answer credibly?" [Footnote omitted.]), aff'd, 318 Conn. 412, 121 A.3d 697 (2015). In the present case, because the defendant was not precluded from offering such expert testimony at trial, it would be inappropriate for this court to consider the proffered materials on appeal. See, e.g., *State* v. *Edwards*, 314 Conn. 465, 478, 102 A.3d 52 (2014) ("[i]t is well established that this court does not find facts"); *State* v. *Rizzo*, 303 Conn. 71, 97 n.16, 31 A.3d 1094 (2011) ("[t]his court cannot, as the defendant requests, rely on excerpts from social science texts or journal articles that were not recognized as authoritative by an expert and admitted into evidence during the penalty phase proceeding . . . to make factual findings regarding the defendant's state of mind for the first time on direct appeal" [citations omitted]), cert. denied, 568 U.S. 836, 133 S. Ct. 133, 184 L. Ed. 2d 64 (2012).

―――――――――――――――――――